THATCHER CHICK *versus* FRANKLIN ROLLINS ET AL.

Upon trial of a complaint for flowing lands, where the issue involves the title to the premises, a judgment will be conclusive between the parties and their privies to the estate, and a title acquired after the commencement of the suit, cannot be introduced to defeat the claim of the demandant.

Neither can such title be available in defence, as showing a want of title in the complainants, where the parties are privies to a former judgment, and who had acquired no superior title prior to the commencement of the process.

Where a mortgager remains in possession for twenty years after the breach of the condition, without payment of interest or admission of the debt; the mortgagee will be bared of his foreclosure, unless the facts and circumstances are inconsistent with the presumption of payment of the notes.

This is a complaint for an increase of yearly damages occasioned by the flowing of the plaintiff's land by the defendant's dam.

REPORTED by CUTTING, J.

The plaintiff introduced the record and proceedings in the original complaint, which were in favor of Frederick A. Butman v. Hezekiah Winslow. Judgment was rendered in that case in this court, upon a verdict of damages assessed at one cent yearly.

It was admitted that the defendants succeeded to the title of Winslow, by conveyance prior to the complaint, viz.: May 19, 1855. The plaintiff then introduced the following deeds of warranty of the premises flowed, all duly recorded, viz.:

Frederick A. Butman to Elisha Piper, dated October 23, 1844.

Elisha Piper to Benjamin York, dated April 17, 1843.

Benjamin York to complainant, Thatcher Chick, dated November 11, 1844.

The defendants then introduced a warrantee deed: Edward Monroe to Bean & Gray, of the premises flowed, dated May 24, 1822.

Chick *v.* Rollins.

Warrantee deed: Bean & Gray to John Durgin, dated February 3, 1824.

Quit claim deed: John B. Durgin and all the other children of John Durgin (except the grantor,) to James S. Durgin, dated March 8, 1856.

Quit claim deed: James S. Durgin to Franklin Rollins, one of the respondents, dated March 29, 1856.

Lease: Same to the respondents, dated March 29, 1856, of right to flow the same premises for ten years, and release of all claim for having flowed.

*John B. Durgin,* introduced by the defendant, testified, that he was one of John B. Durgin's children; that his father died twelve years ago; that his father once owned and occupied the premises flowed; that this was when he was not twenty-one years old; that he had not occupied it since.

*Cross-Ex.*—Frederick A. Butman occupied the premises, and others; it had shifted hands several times. Mr. Varney occupied it; also Mr. Piper and others.

James S. Durgin came to me and got the deed from me, last March; he paid me nothing for it.

Monroe Durgin, the youngest of the children of said John Durgin, is twenty-seven years old.

The plaintiff then introduced a mortgage from Bean & Gray to Edward Monroe, dated December 5, 1822, to secure certain notes, payable January 1, 1826.

An assignment of said mortgage: Edward Monroe to Samuel Butman, dated September 15, 1826.

Deed: Samuel Butman to Frederick A. Butman, dated June 15, 1830.

Several other deeds, conveying title from F. A. Butman; from several intermediate persons, among whom was Asa Varney, and finally back to Frederick A. Butman, by deed from Bartlett Jackson, dated April 18, 1838.

*A. W. Paine,* counsel for the complainant.

I. The plaintiff having succeeded to the title of Butman, and the defendant to the title of Winslow, the parties to this

suit are on both sides privies in estate to the parties in the former suit or complaint.

Such being the case, the parties here are concluded by the former judgment as to all the facts which entered into that judgment, or were necessary to its rendition. This was directly adjudged in *Adams* v. *Pearson*, 7 Pick. R., 341; and is substantially affirmed by *Charles* v. *Porter*, 10 Met. R., 37; and indeed is supported by the late decision of *Hill* v. *Sayles*, 4 Cush. R., 552, and *Pease* v. *Whitten*, 31 Maine R., 117. The principles of the last case go beyond those now contended for.

That the title is a matter directly in issue, and of course enters into the judgment, is a direct result of the statute authorizing the suit, which provides " that any person sustaining damages *in his lands*," &c., may obtain compensation, &c. R. S., ch. 126, s. 5. Also from s. 9, which provides " that the mill owner may appear and plead in bar that the complainant has no right, title or estate in the lands alleged to be flowed," &c. Here then there is a distinct provision, both on the part of the plaintiff and the defendant, for making the title a matter of adjudication in order to sustain the complaint. By the general principle of the cases cited, then, the present parties are concluded by the judgment in the original proceedings. This was in fact directly decided in *Knapp* v. *Clark*, 30 Maine R., 244; *Pierce* v. *Knapp*, 34 Maine R., 402.

II. But supposing it to be otherwise, and we are called upon here to make out our title. We claim that we have done so.

The original title, as both contend, was in Edward Monroe, from whom it passed to Bean & Gray, in 1822. Bean & Gray then mortgaged to the plaintiff's ancestor, and afterwards conveyed the right of redemption to the defendant's ancestor.

1. That mortgage still exists—never has been paid. No proof of payment is made, and there is nothing to discredit the fact. In order to support the mortgage, it is not nec-

essary to introduce the notes. It is for the adverse party to prove their payment. This has been directly adjudged by our court, in *Thompson* v. *Watson*, 14 Maine R., 316.

The notes cannot be found, and are therefore not produced. Thirty-five years' time and a favorable litigation has passed over them, and their existence is a matter of doubt. The facts show, however, that they have never been paid.

Thus the mortgage was given in 1822, to secure notes payable in 1826; by Monroe assigned to Samuel Butman, September 15, 1826; by S. Butman assigned to F. A. Butman, June 15, 1830, when several other conveyances were made; the estate then coming again back into F. A. Butman, April 18, 1838. Shortly after, F. A Butman, with no other than his title through this mortgage, brings his complaint October 1, 1839, and after a severe litigation for six years, judgment is rendered in his favor in October, 1845. Here is the first fact on which the court are called to decide, on the present validity of the mortgage.

2. Possession has always followed in Butman and his privies. F. A. Butman, Varney, Piper and complainant, and several others, being the several intermediate holders, have in the mean time occupied the land, showing that the mortgage and of course the notes are alive.

On the contrary, Durgin has not been in possession; never has been for any time since John B. was twenty-one, he being now forty-six years old. Here are twenty-five years of abandonment, showing a total want of interest and title.

3. And now that the title has been raked up, the heirs are found making deeds without consideration, thus demonstrating a total want of title, at least in the opinion of those who own it, if there was any title existing adverse to the mortgage which we set up.

From such facts as these, the court will presume the non-payment of a mortgage, and that it is still in force. *Joy* v. *Adams*, 26 Maine R., 330.

III. The title which the defendant sets up under the deeds from Durgin, cannot avail him, it having been acquired since

the commencement of these proceedings. The date of our complaint is September 3, 1855; the date of Durgin's deed to the defendant is March 29, 1856. That this title cannot be admitted to affect the rights of the complainant here, is directly adjudicated in *Great Falls Company* v. *Worster*, 15 N. H. R., 414; *Curtis* v. *Francis*, 9 Cush. R., 427, 443; *Manning* v. *Laboree*, 33 Maine R., 343, 347.

The action properly brought, and the plaintiff's right is perfect. *Jones* v. *Pierce*, 16 Maine R., 411.

*C. P. Browne*, counsel for the respondents.

The principle that no person or party is bound by a judgment, to which he was not a party, or notified to appear, and did not appear or plead, and had no right to appear and plead, or be heard, is too familiar to require citing authorities on this point.

The defendants do not rely on any right or claim to this lot No. 76, coming to them from Winslow. Therefore litigation in relation to that lot, between Winslow and Butman, in years past, has no bearing upon the rights of these defendants.

It is pretended that these defendants are estopped in this case, by the proceedings and report of referees in the complaint, Butman v. Winslow. And the case of *Adams* v. *Pearson*, 7 Pick. R., 341, is relied on as authority on this point. But the court will at once perceive that that case and this are not analagous. There, the second case for increase of damages, was between the original parties; and it was well held, that the defendant, having had one full and fair trial, and a judgment against him, was estopped to controvert the question again. The court say he cannot, for "otherwise there would be no end of controversies."

It is clear that there is a very broad difference between that case and this.

The original case, Butman v. Winslow, simply decided that, *as between* Butman and Winslow, the former had the better title, but as between Butman and any other party, *but*

Chick *v.* Rollins.

Winslow, or one claiming to derive his title to *this* lot from him, the question is left *open*, by that decision.

The defendants do not claim title to this lot from Winslow; therefore they are not affected by that judgment.

Will it be pretended, that by that decision Butman got a good title against the world, when it appears that the fee simple title was in John Durgin, at the time that case was being litigated, and he had no knowledge of it whatever? Clearly not, and if he was not bound by it, then his grantee is not.

This case is more like that of *Pike* v. *Galvin*, 29 Maine R., 183, and the authorities therein cited I refer to. In that case the whole question is elaborately discussed, by Judge SHEPLEY, as to subsequently acquired title, after having made a conveyance of the premises. And the conclusion of the court is, " That one having conveyed land by deed, with covenants of warranty, *then* having no title, but subsequently obtaining title, this latter title inures to his grantee, and perfects his title." But if his deed of conveyance does not contain such covenants, a title subsequently obtained does not inure to his original grantee.

Now, on this principle, a judgment against a party cannot be said to be more conclusive against him than his quit claim deed.

If the title is shown to be in the defendants, the plaintiff cannot recover. If the title is shown to be in John Durgin's heirs, when this process was commenced, the plaintiff cannot recover. For neither being in the *actual* possession, the plaintiff must recover on the *strength* of his own title.

The report of the case is silent on the point as to who is in possession. This court cannot therefore infer that either of these parties is in actual possession. But if it shall be said, that the court will presume *that* party in possession who shows the better title, then the question again recurs, which has the legal title?

The defence relies on the title of Edward Monroe, conveyed to Gray & Bean—by them to John Durgin. By the

decease of Durgin, the estate vested in his children as heirs at law, who are shown to be those named in the case, viz.: John B., James S. and Munroe Durgin, and Mrs. Heald, and by them to the defendants. If the court find the title to have been in Durgin's heirs, at the time this process was commenced, (if the question, as tried and decided, is to relate to the point of time when this process is dated,) *then* the plaintiff cannot recover. If the defendants hold the title, or by virtue of the lease to them, or the release from Durgin's heirs, the claim for flowage is discharged, *then* the plaintiff cannot recover.

If the plaintiff holds the title to this land, even though he be out of actual possession, I admit he can recover.

The title is not in the plaintiff, unless it is in him by virtue of the original mortgage, from Bean & Gray to Monroe, given in 1822, and by that his only claim can be as assignee of the mortgage. No foreclosure.

Is that mortgage here before the court a legal, a valid mortgage? Is it to be regarded as upheld, or dead?

It was executed more than thirty years before the date of this process, for the express purpose of securing four promissory notes therein named. These notes, by their terms, fell due four years subsequently to their date. The presumption is, they were paid and canceled at maturity. The presumption is, that Gray & Bean were able to fulfill their contracts, and did so, and paid these notes.

The original mortgage is presented to the court. But the notes are not here. Not a word of evidence of the existence of those notes is offered here by the plaintiff, since they became payable; no excuse or reason assigned, or attempted to be assigned, why these notes are not here.

"A mortgage has no validity after the debt secured by it has been paid." *Williams* v. *Thurlow*, 31 Maine R., 392.

"The lapse of twenty years furnishes a legal presumption that a debt, though secured by a mortgage, has been paid." *Sweetser* v. *Lowell*, 33 Maine R., 446.

This case is much stronger than that just cited. In that

the note was before the court, but more than twenty years had elapsed since its maturity. The court held it to be presumed to be paid, but that this fact might be rebutted by the plaintiff.

In the case at bar, more than thirty years have elapsed, and not only no evidence is put in that the debt is still due, but the notes are not even in existence.

In *Joy* v. *Adams*, 26 Maine R., 333, the court say, " The mortgager, or his grantee, may allege payment, and for proof rely on the lapse of time, when it amounted to twenty years from the accruing of the indebtment."

" Such a lapse of time," the court say, " has been deemed sufficient for the purpose, in the absence of any countervailing considerations."

" This is admitted as a presumption of law, which may be removed by circumstances tending to produce a contrary presumption." Here far more time has elapsed, and there is not a single countervailing circumstance. Even the notes are *gone*.

" If the mortgage debt has been paid, no action can be maintained on the mortgage, even though it has not been formally discharged." *Hadlock* v. *Bulfinch*, 31 Maine R., 246.

From these authorities, it is clear, that these defendants are not estopped by the proceedings in the suit, Butman v. Winslow, as they neither take or rely on any title or right to this lot, No. 76, from him, but obtain their right from another and entirely distinct source.

It is also clear, that the title to this lot passed out of Edward Monroe, May 24, 1822, and has been transmitted direct to those defendants—at least, direct to John Durgin's heirs, and either *they* or the defendants hold the title at this time.

If this case shall be decided as relating to the point of time when this suit was commenced, then the title was in Durgin's heirs, and the plaintiff, not having *the title* or *possession*, cannot prevail in this suit. If the question is decided as relating to the point of time when this case was reported, October 7, 1856, then the title was in the defendants, and all

claim for damages being released to the defendants, for flowing, the court will not appoint commissioners to fix future damages.

·Both plaintiff and defendants claim title from Monroe—the plaintiff by virtue of the mortgage of December 5, 1822, and that, as has been shown, having been discharged, the plaintiff fails to establish title, and must fail in this suit.

The cases cited by the plaintiff, from 10 Met. R., 37, and from 4 Cush. R., 582, relate to the effect of a judgment between the original parties, and are not controverted in this case.

The case of *Thompson* v. *Watson*, 14 Maine R., 316, does not militate against this case. There the mortgage had been but recently made, and it does not appear whether the notes were in the case or not.

Here the notes were given more than thirty years, and the law presumes payment after twenty years, and the burden is thrown upon the defendants.

The case of *Pierce* v. *Knapp*, 34 Maine R., 402, simply decides that a judgment for flowage is a charge upon the mill estate, and that the assignee is holden to pay the yearly damage. But the question of his right to set up a distinct title, where a new complaint is filed, is not presented in that case.

The case of *Manning* v. *Laboree*, 33 Maine R., 343, turned upon the pleadings;· but the broad difference between that case and the case at bar, is, that there the plaintiff had title, if the defendant's title, acquired after suit, was not valid; here, if the defendant's title is not good, for the reason that it is acquired since the date of this suit, then the title is in the Durgin heirs, and the defendants being thus without lawful title, and not being in possession, cannot prevail.

It has been said that the lapse of time since John Durgin occupied is an argument of the payment of these notes. It will be noticed that only ten or twelve years elapsed, before his death, and his heirs minors, one only being *now* twenty-seven years of age.

TENNEY, C. J. Frederick A. Butman, in the year 1845, obtained judgment in this court, against Hezekiah Winslow, on a complaint under ch. 45, of the statutes of 1821, (R. S., ch. 126,) entitled "an act for the support and regulation of mills." Under that judgment Winslow was bound to pay the sum of one cent, as the yearly damage for the flowage of the land, to which it was adjudged Butman had title.

Butman transmitted his right on the premises, so that through several mesne conveyances, the title is in the present complainant. It is admitted that the interest of Winslow in the dam, &c., is now in the respondents, under a deed dated May 19, 1855. This complaint, which is dated September 3, 1855, is under the act referred to in the Revised Statutes, for an increase of the yearly damage, occasioned by the flowage of the land by the same dam.

It is conceded by the respondents, that they could have interposed no valid objection to the proceedings prayed for in the complaint, if they had no other and greater rights than those which Hezekiah Winslow originally had. But they now claim an absolute title in the premises flowed, which came directly from the heirs of one who was a stranger to the proceedings under the original complaint, in addition to their title in the mills, dam, and mill privilege.

The right under which the respondents would now defend, is that which it is alleged that John Durgin, deceased, held at the time the original complaint was filed, from whose heirs Franklin Rollins claims to have derived a title to the premises, by deed, dated March 29, 1856. The respondents also claim the right to flow the land for the term of ten years, by virtue of a lease, from the heirs of said Durgin, in which lease there is a discharge of all right to recover damages for previous flowing. This lease bears a date similar to that of the deed to Rollins.

It is insisted by the complainant, that whatever rights may have been acquired by the respondents from the heirs of John Durgin, they, having been obtained since the institution of the present suit, cannot be a defence thereto.

The respondents contend, that this newly acquired title, being pleaded, is a bar to the complaint. The case, as it is now presented, is in its nature a real action. The issue is touching the title to the premises. If a trial and a judgment upon that issue should follow, it would be conclusive between the parties and their privies. It is well established, that a title, in such actions, acquired after the commencement of the suit, cannot be allowed, to be introduced to defeat the claim of the demandant. In the case of *Andrews and ux.* v. *Hooper*, 13 Mass. R., 472, WILDE, J., in delivering the opinion of the court, says, " The evidence of title, thus acquired, has been, I believe, uniformly rejected by the courts." And it is said by SHAW, C. J., in the opinion of the court, in *Curtis* v. *Francis*, 9 Cush. R., 427, referring to this principle, " It is now a rule of law, well settled by authorities."

It is insisted in behalf of the respondents, that if they are precluded from setting up the title of Durgin, acquired by them since the commencement of this suit, it is available in defence, as showing a want of title in the complainant. The former judgment in favor of Butman v. Winslow is properly admitted by the respondents to be conclusive upon them, as the grantees under Winslow's title. This judgment cannot be overhauled, between parties who are privy thereto, and who had acquired no superior title before the commencement of this process. Such a course of proceedings would have the effect of a new trial; and if the respondents should prevail, two inconsistent judgments upon the title to the premises might stand upon the record, in what is substantially the same case.

The result to which we have come, is a final disposition of the issue, upon the title of Durgin, set up in defence, and would entitle the complainant to have the damages arising from the flowage of the premises appraised. But the question whether Franklin Rollins has at this time a title to the premises, has been argued, and it is proper that it should be examined.

Edward Monroe conveyed the premises by deed, dated May 24, 1822, to Bean & Gray, who, on December 5, 1822, reconveyed the same in mortgage to Monroe, to secure the payment of certain promissory notes, payable January 1, 1826. The evidence introduced and reported shows that the complainant has the rights of the mortgagee, and that Rollins has those of the mortgager, whatever those rights may be. The notes referred to in the condition of the mortgage are not produced, and it does not appear from the case whether they were actually paid or not.

Bean & Gray conveyed their right to John Durgin, by deed, dated February 3, 1824. Parol evidence was introduced, showing that Durgin once owned and occupied the premises; that he has not occupied them since the year 1831, even if he continued in the occupation till that time; and that he died about the year 1844. There is no evidence whatever that he, his heirs, or any one under him or them, or in behalf of either, have claimed title thereto, or been in possession, prior to the conveyance of his right to Franklin Rollins.

The mortgage to Monroe was assigned to Samuel Butman, on September 15, 1826, and the assignee, on June 15, 1830, conveyed by absolute deed to Frederick A. Butman. Other deeds were introduced, showing several intermediate conveyances to different persons, till the mortgage title is found in Frederick A. Butman, under a deed from Bartlett Jackson to him, dated April 18, 1838. It appears from evidence in the case, that the land was in the possession of F. A. Butman, and others, among whom were Varney and Piper, who had each at different times a deed thereof.

It is contended on the part of the complainant, that an indefeasible title had been obtained under the mortgage to Monroe, by a possession for more than twenty years, without any claim made under the mortgager. On the other hand it is insisted, that the same length of time having elapsed since the maturity of the notes referred to in the condition of the mortgage, they are presumed to have been

paid, and the mortgage extinguished; and in confirmation of this presumption, the non-production of the notes by the complainant is relied upon.

Judge STORY, in 2 Com. on Eq. Juris., s. 1028 (a), says: "In respect to the time within which a mortgage is redeemable, it may be remarked, that the ordinary limitation is twenty years from the time when the mortgagee has entered into possession, after the breach of this condition, under his title, by analogy to ordinary limitations of rights of entry, and actions of ejectment. If, therefore, the mortgagee enters into possession, in the character of a mortgagee, and by virtue of his mortgage alone, he is for twenty years liable to account, and if payment be tendered to him, he is liable to become a trustee of the mortgager, and be treated as such. But if the mortgager permits the mortgagee to hold the possession for twenty years, without accounting and without admitting that he possesses a mortgage title only, the mortgager loses his right of redemption, and the title of the mortgagee becomes absolute in equity, as it previously was in law."

In note (b) to the same section, it is said, "Limitations or considerations will, in many respects, apply to the right of foreclosure of a mortgagee. If he has supposed the mortgager to remain in possession for twenty years after the breach of the condition, without any payment of interest, or any admission of the debt, or other duty, the right to file a bill for a foreclosure will generally be deemed to be barred and extinguished. However, in cases of this sort, as the bar is not positive, but is founded upon a presumption of payment, it is open to be rebutted by circumstances."

Notwithstanding the lapse of more than twenty years since the maturity of the notes referred to in the condition of the mortgage, and the non-production thereof by the complainant, the facts and circumstances are altogether inconsistent with a claim by Durgin or his heirs under the mortgage. The inducement in Durgin to pay the notes, and thereby extinguish the mortgage, would extend to the taking

of possession of the land as the fruit of the payment. And the omission to do the latter, is very strong circumstantial evidence that he omitted to do the former. The motives which are supposed to have operated upon his mind, would influence the minds of his heirs after his decease.

During the time when Durgin and his heirs made no claim to the premises, and are not shown to have taken the least concern therein, we find them passing by absolute deeds from one to another, whose claim was under the mortgage. Piper had a deed from F. A. Butman, whose title was from the assignee of the mortgagee, as early at least as 1844, and he is shown to have been in the occupation, as well as Butman, and Varney, who had title to the land by deed; and various other persons have been in possession, as one succeeded the other, by absolute conveyances.

It cannot be doubted, that Durgin released his right in some manner, that he abandoned the premises, and never resumed the possession thereof, or that the mortgage to Monroe was foreclosed. The ground taken by the respondents is, that the right of Durgin remained in him and his heirs, till the conveyance of that right on March 29, 1856. If so, the facts clearly show an abandonment on his part, and that of his heirs. And though it is not expressly proved, that there was a continued possession of the complainant and those under whom he claims, yet the facts upon this matter, in connection with absence of all proof of the assertion of any right whatever under the title claimed by the respondents, leave little doubt that a possession under the mortgage, from 1831 to the date of this complaint, actually existed. Whether it was so or not, is not material for the disposition of the case as it is now before us. The presumption of the payment of the notes being rebutted from evidence reported, the title has become absolute in the complainant, under the mortgage, to the premises, or the mortgage is still open to redemption. The absolute rights of the parties, as they respectively claim under the mortgagee and the mortgager, we cannot now definitely determine. But the title under the

former proceedings between Butman and Winslow being settled, as between these parties, the complainant is entitled to *Judgment for an appraisal of the damages, according to the prayer in his complaint.*